# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL VAUGHN, | CASE NO. 1:09-cv-02030-GBC (PC) |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | (Doc. 1) |
| COLE, et al., | |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

## I. Procedural History

Plaintiff Emmanuel Vaughn (aka Raymond Davis) ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on November 19, 2009, which is currently before the Court. Doc. 1.

## II. Screening

### A. Screening Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"'Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff.'" *Hamilton v. Brown*, 630 F.3d 889. 892-93 (9th Cir. 2011) (quoting *Resnick v. Warden Hayes*, 213 F.3d 443, 447 (9th Cir.2000). "'Additionally, in general, courts must construe pro se pleadings liberally.'" *Id.* A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In determining whether to dismiss an action, the Court must accept as true the allegations of the complaint in question, and construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### B. Plaintiff's Complaint

Plaintiff is incarcerated at Kern valley State Prison in Delano California and is suing under section 1983 for events which occurred while a prisoner at the California Substance Abuse Treatment Facility, State Prison ("CSATF") in Corcoran California. Doc. 1. In his complaint, Plaintiff names the following defendants: 1) Cole (Correctional Officer at CSATF); 2) Devine (Correctional Officer at CSATF); 3) Johnson (Correctional Officer at CSATF); 4) and Does 1 through 2 (Correctional Officers at CSATF). Doc. 1 at 2. Plaintiff seeks compensatory and punitive damages against all Defendants and damages in the amount if $100.00. Doc. 1 at 3.

Plaintiff alleges that on September 3, 2008, CSATF implemented "a Hispanic inmate lockdown" because the Hispanic inmate population was considered to be a threat to the "safety and security of that institution." Doc. 1 at 3. Plaintiff states that the "Program Status Report" placed the named defendants on notice that the Hispanic inmates were on lock-down on September 3, 3008, and the security threat that the lock-down aimed to address. Doc. 1 at 4. According to Plaintiff,

Defendant Devine admitted to having knowledge that Hispanic inmates were on lock-down September 3, 2008. Doc. 1 at 3. Prior to September 3, 2008, Plaintiff was assigned to the "D-Facility" main kitchen as a second watch worker. Plaintiff's assignment to the main kitchen made Plaintiff eligible to be a "criticle [sic] worker, which meant that Plaintiff was authorized to perform work duties during certain lockdown periods." Doc. 1 at 3. Plaintiff alleges that on the morning of September 3, 2008, Defendant John Doe #1 performed work duties as a second watch staff as a "D-facility Building 4 Tower Officer." Doc. 1 at 3.

According to Plaintiff, Defendant Doe #1's duty as a tower officer was to release and secure inmates in their housing units throughout the work day. Doc. 1 at 3-4. At or about 7:00 am, Defendant Doe #1 announced through the speaker system that he was going to start releasing inmate critical workers and then proceeded to release them. Doc. 1 at 4. According the Plaintiff, because Plaintiff was African American, he was allowed to work during that particular lock-down period.

On September 3, 2008, Defendant Doe #1 released from his cell a Hispanic inmate named Gomez and allowed inmate Gomez to work in the main kitchen during the lock-down and inmate Gomez later attacked and "severely battered" Plaintiff with a weapon. Doc. 1 at 4. As a result of the attack, Plaintiff suffered a three and a half inch "life threatening laceration to his neck," a three inch laceration to his right shoulder and a four and a half inch laceration to his back. Doc. 1 at 4. Plaintiff states that prior to September 3, 3008, inmate Gomez was assigned to work in the main kitchen, however, the September 3, 2008, lock-down meant that inmate Gomez was not authorized out of his cell without proper escort. Doc. 1 at 4. Plaintiff argues that the attack could have been prevented if any of the named defendants noticed that inmate Gomez was not allowed to leave his cell due to the Hispanic inmate lock-down. Doc. 1 at 4. Additionally, Plaintiff states that "[i]nmate Gomez's Hispanic ethnicity was more than recognizable." Doc. 1 at 4.

On September 3, 2008, Defendant Cole worked as a second watch change supervisor. Doc. 1 at 4. Defendant Cole's duties included collecting inmate identifications cards from inmates and placing the cards in the appropriate work duty slots as the inmates pass through the work change area. Doc. 1 at 4. Plaintiff asserts that Defendant Cole allowed inmate Gomez to pass through the work change area and to proceed to the main kitchen. Doc. 1 at 4.

On September 3, 2008, Defendant Doe #2 worked as the main kitchen supervisor for the second watch work shift. Defendant Doe #2's duties included observing inmates as they performed their work duties and to ensure that every inmate was authorized to work in the main kitchen. Doc. 1 at 4. Plaintiff asserts that Defendant Doe #2 allowed inmate Gomez to remain in the main kitchen and failed to recognize that inmate Gomez was unauthorized to work in the main kitchen due to the September 3, 2008, lock-down. Doc. 1 at 4.

According to Plaintiff, Defendant Devine worked as a "Third Watch" main kitchen supervisor and allowed Defendant Gomez to perform voluntary overtime work duties in the main kitchen on September 3, 2008. Doc. 1 at 4. Plaintiff asserts that Defendant Devine admitted to knowing that Hispanic inmates were on lock-down on September 3, 2008, the day that Plaintiff was attacked under Defendant Devine's supervision. Doc. 1 at 4. Additionally, Defendant Johnson worked as a "Third Watch" main kitchen supervisor and failed to recognize that inmate Gomez was not authorized to work in the main kitchen and such failure led Plaintiff to be attacked by inmate Gomez. Doc. 1 at 4.

### C. Eighth Amendment-Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Id.* at 833; *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *E.g., Farmer* at 847; *Hearns* at 1040.

In order to constitute "deliberate indifference," the prison official (1) must have subjective knowledge of the risk of serious harm, and (2) must nevertheless fail to reasonably respond to the

risk. *Farmer v. Brennan*, 511 U.S. 825, 837-38. "In order to be actionable under section 1983 . . . more than an isolated incident of negligent failure to protect must be alleged." *Williams v. Field*, 416 F.2d 483, 485 (9th Cir. 1969); *see e.g.*, *Farmer* at 847 (applying deliberate indifference standard to Eighth Amendment failure to protect claim); *cf. Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (negligent failure to protect does not state a Fourteenth Amendment Due Process claim).

### D.   Analysis

The essential issue before the Court is whether Defendants' failure to follow standard procedures regarding the lock-down of inmates amounts to deliberate indifference. The Court finds that Defendants failure to follow standard procedures in this instance may be negligent, but does not amount to deliberate indifference. *See Adames v. Perez*, 331 F.3d 508, 512-14 (5th Cir.2003) (finding that claim of prison officials not following standard safety procedure amounted to negligence and did not demonstrate deliberate indifference); *Van Dyke v. Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, at *5-7 (E.D. Cal. Aug. 22, 2011). The Court finds *Van Dyke v. Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, particularly instructive to this instant case.

In *Sisto*, the plaintiff argued that prison officials acted with deliberate indifference when failing to follow established escort procedures to ensure that there would not be violence when Southern Hispanic inmates were escorted through the vicinity of African American inmates. *Sisto*, 2011 WL 3667434, at *5-6. The court in *Sisto* took judicial notice of the "the fact that during lockdowns, staff of the affected institution are required to prepare formal Program Status Reports which outline the management Plan of Operation [and that] [t]hese status reports continue until normalcy is achieved and are designed to notify both staff and inmates of prevailing conditions." *Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, at *6.

In *Sisto*, the court observed:

> With the volatile situation posed by prisons dominated by racial gangs, prison officials have the most difficult task of tailoring policies which correspond to the objectives of prison order and the other obligations the law imposes. Though permanent racial segregation, one-to-one inmate to officer ratios, and handcuffed escorts might seem like the best possible means to protect inmates from violent dangerous conditions at CSP–Solano, the Constitution prohibits segregation of inmates by race merely because of a generalized expectation of racial violence. *Johnson v. California*, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (U.S.2005).

Prisons are required to narrowly tailor their policies to address *particularized circumstances*.

*Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, at *6 (emphasis in original).

In this instance, Plaintiff argues that since Hispanic inmates were on lock-down, inmate Gomez could easily be identified as Hispanic and Plaintiff was African American, Defendants should have known that Plaintiff would be attacked. However, Plaintiff fails to allege any particularized circumstances to demonstrate that Defendants were on notice of particularized circumstances that would lead Defendants to believe that inmate Gomez was going to harm Plaintiff. The mere fact that "Gomez's Hispanic ethnicity was more than recognizable" and that Defendants may not have followed the prison's lock-down procedure does not entail that Defendants were deliberately indifferent for allowing inmate Gomez to work in the main kitchen with Plaintiff, an African American. Additionally, Plaintiff alleges that since he worked in the main kitchen, he was deemed a "critical worker" and was authorized to work during certain lock-down periods. Doc. 1 at 3. As inmate Gomez worked the same position as Plaintiff, it may have been possible that he too was classified as a "critical worker" and was authorized to work during the lock-down of September 3, 2008.

As Defendants did not have knowledge that inmate Gomez posed a specific threat to Plaintiff, Defendants were not deliberately indifferent to Plaintiff's safety and their failure to follow lock-down procedures amounts to negligence. Therefore, Plaintiff fails to state a claim upon which relief can be granted.

### III. Conclusion and Order

Plaintiff's complaint fails to state a claim upon which relief may be granted under section 1983. The Court will grant Plaintiff an opportunity to file an amended complaint. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, *Iqbal*, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Plaintiff's first amended complaint, filed November 19, 2011, is dismissed for failure to state a claim upon which relief may be granted;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   December 1, 2011

_____
UNITED STATES MAGISTRATE JUDGE