# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL VAUGHN, | CASE NO. 1:09-cv-02030-GBC (PC) |
| Plaintiff, | ORDER DISMISSING ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM |
| v. | |
| COLE, et al., | (Doc. 10) |
| Defendants. | |

## I.  Procedural History

Plaintiff Emmanuel Vaughn (aka Raymond Davis) ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on November 19, 2009. Doc. 1. On December 1, 2011, the Court dismissed the action with leave to amend. Doc. 9. On December 19, 2011, Plaintiff filed a first amended complaint, which is currently before the Court. Doc. 10.

## II.  Screening

### A.  Screening Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"'Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff.'" *Hamilton v. Brown*, 630 F.3d 889. 892-93 (9th Cir. 2011) (quoting *Resnick v. Warden Hayes*, 213 F.3d 443, 447 (9th Cir.2000). "'Additionally, in general, courts must construe pro se pleadings liberally.'" *Id.* A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In determining whether to dismiss an action, the Court must accept as true the allegations of the complaint in question, and construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

**B.    Plaintiff's Complaint**

Plaintiff is incarcerated at Kern valley State Prison in Delano California and is suing under section 1983 for events which occurred while as a prisoner at the California Substance Abuse Treatment Facility, State Prison ("CSATF") in Corcoran California. Doc. 10. In his complaint, Plaintiff names the following defendants: 1) Cole (Correctional Officer at CSATF); 2) Devine (Correctional Officer at CSATF); 3) Johnson (Correctional Officer at CSATF); 4) and Does 1 through 2 (Correctional Officers at CSATF). Doc. 10 at 2-3. Plaintiff seeks compensatory and punitive damages in the amount if $100,000.00. Doc. 1 at 3.

In his first amended complaint Plaintiff alleges that on September 3, 2008, CSATF was conducting a "Hispanic inmate lockdown in which [Hispanic inmates were] deemed threats to the safety and security of that institution." Doc. 10 at 3. Prior to September 3, 2008, Plaintiff was

assigned to the facility's main kitchen.  Doc. 10 at 3.  Plaintiff's assignment to the main kitchen made Plaintiff eligible for critical worker status which meant that Plaintiff was eligible to perform work duties during certain racial and other lock-down periods.  Doc. 10 at 3.  Plaintiff alleges that on the morning of September 3, 2008, Defendant John Doe #1 performed work duties during the second watch shift as a "D-Yard 4 Block Tower Guard."  Doc. 10 at 3.

According to Plaintiff, Defendant Doe #1's duty as a tower officer was to release and secure inmates in the housing units.  Doc. 10 at 3.  At 7:00 a.m., Defendant Doe #1 announced through the speaker system that he was going to start releasing inmate critical workers and then proceeded to read the September 3, 2008, program status report which stated that "Hispanic and white inmates were, as of then, locked down and that Black and [inmates of other races] were to proceed to work."  Doc. 10 at 3-4.  According the Plaintiff, because Plaintiff was African American, he was allowed to work during that particular lock-down period.  Doc. 10 at 4.

On September 3, 2008, Defendant Doe #1 released from his cell a Hispanic inmate named Gomez and allowed inmate Gomez to work in the main kitchen during the lock down.  Doc. 10 at 4.  Plaintiff states that prior to September 3, 2008, inmate Gomez was assigned to work in the main kitchen, however, the September 3, 2008, lock down meant that inmate Gomez was not authorized to be out of his cell without proper restraints and escort.  Doc. 10 at 4.  Moreover, Plaintiff emphasizes that "it would have been impossible for Gomez to perform work duties as a critical worker during a Hispanic lockdown."  Doc. 10 at 4.  Plaintiff explains that Level Four facilities are strict and tightly regulated.  Doc. 10 at 4.  Prison officials are "highly encouraged to follow every program status report to the letter."  Doc. 10 at 4.  According to Plaintiff, On September 3, 2008, every Hispanic inmate was locked down because they were deemed threats by professional and reliable sources.  Doc. 10 at 4.  Plaintiff states that during the September 3, 2008, lock down, Hispanic inmates were dangerous "to staff and inmates alike no[t] to just the Plaintiff personally."  Doc. 10 at 4.

On September 3, 2008, Defendant Cole worked as a second watch change supervisor.  Doc. 10 at 4.  Defendant Cole's duties included collecting identification cards from inmates and placing the cards in the appropriate work duty slots before allowing them to access the main kitchen.  Doc.

3

10 at 4. Plaintiff asserts that Defendant Cole failed to recognize that inmate Gomez was unauthorized work, yet still allowed Gomez to pass through the work change area and to proceed to the main kitchen. Doc. 10 at 4.

On September 3, 2008, Defendant Doe #2 worked as the main kitchen supervisor for the second watch work shift. Doc. 10 at 4. Defendant Doe #2's duties included observing inmates as they performed their work duties and to ensure that every inmate was authorized to work in the main kitchen. Doc. 10 at 4. Plaintiff asserts that Defendant Doe #2 allowed inmate Gomez to remain in the main kitchen. Doc. 1 at 4.

According to Plaintiff, Defendant Devine worked as a "Third Watch" main kitchen supervisor during the September 3, 2008, lock-down. Doc. 10 at 4. Defendant Devine's inmate-workers were understaffed and it is common practice to allow second watch workers to voluntarily perform overtime duties. Doc. 10 at 4. Defendant Devine allowed Defendant Gomez (the only Hispanic inmate in the work group) to perform voluntary overtime work duties in the main kitchen on September 3, 2008. Doc. 10 at 4. Plaintiff asserts that Defendant Devine admitted to knowing that Hispanic inmates were on lock-down on September 3, 2008. Doc. 10 at 4. Additionally, Defendant Johnson worked as a "Third Watch" main kitchen supervisor and failed to recognize that inmate Gomez was not authorized to work in the main kitchen and failed to take appropriate action. Doc. 10 at 4.

On September 3, 2008, inmate Gomez attacked Plaintiff in the main kitchen with a weapon. Doc. 10 at 4. As a result of the attack, Plaintiff suffered a three and a half inch laceration to his neck, a three inch laceration to his right shoulder and a four inch laceration to his back. Doc. 10 at 4. Plaintiff states that "Plaintiff has no prior history of ill will with Gomez, so Plaintiff didn't feel threatened. He couldn't, therefore, particularize information that [Plaintiff] was in danger and pass it on to officials." Doc. 10 at 4. Nevertheless, Plaintiff asserts that "[a]s trained prison officials, it's their duty to provide personal safety to inmates by following their program status reports. Every one of the named defendants failed to do so and such the Plaintiff was attacked." Doc. 10 at 4. Plaintiff argues that the attack could have been prevented if any of the named defendants had "done their jobs" by escorting inmate Gomez back to his cell after he "snuck[ed]" out. Doc. 10 at 4.

### C. Eighth Amendment-Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Id.* at 833; *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *E.g., Farmer* at 847; *Hearns* at 1040.

In order to constitute "deliberate indifference," the prison official (1) must have subjective knowledge of the risk of serious harm, and (2) must nevertheless fail to reasonably respond to the risk. *Farmer v. Brennan*, 511 U.S. 825, 837-38. "In order to be actionable under section 1983 . . . . more than an isolated incident of negligent failure to protect must be alleged." *Williams v. Field*, 416 F.2d 483, 485 (9th Cir. 1969); *see e.g.*, *Farmer* at 847 (applying deliberate indifference standard to Eighth Amendment failure to protect claim); *cf. Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (negligent failure to protect does not state a Fourteenth Amendment Due Process claim).

### D. Analysis

Plaintiff reiterates the same allegations with minor additions which concede that Defendants had no way of knowing that inmate Gomez would harm Plaintiff in particular. As with the Court's prior screening order, the essential issue before the Court is whether Defendants' failure to follow standard procedures regarding the lock-down of inmates amounts to deliberate indifference. The Court finds that Defendants' failure to follow standard procedures in this instance may be negligent, but does not amount to deliberate indifference. *See Adames v. Perez*, 331 F.3d 508, 512-14 (5th Cir.2003) (finding that claim of prison officials not following standard safety procedure amounted to negligence and did not demonstrate deliberate indifference); *Van Dyke v. Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, at *5-7 (E.D. Cal. Aug. 22, 2011). The Court finds *Van Dyke v. Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, particularly instructive to this instant case. *Van Dyke v. Sisto*, No.

5

2:08-cv-3120, 2011 WL 3667434, at *5-7 (E.D. Cal. Aug. 22, 2011).

In *Sisto*, the plaintiff argued that prison officials acted with deliberate indifference when failing to follow established escort procedures to ensure that there would not be violence when Southern Hispanic inmates were escorted through the vicinity of African American inmates. *Sisto*, 2011 WL 3667434, at *5-6. The court in *Sisto* took judicial notice of the "the fact that during lockdowns, staff of the affected institution are required to prepare formal Program Status Reports which outline the management Plan of Operation [and that] [t]hese status reports continue until normalcy is achieved and are designed to notify both staff and inmates of prevailing conditions." *Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, at *6.

In *Sisto*, the court observed:

> With the volatile situation posed by prisons dominated by racial gangs, prison officials have the most difficult task of tailoring policies which correspond to the objectives of prison order and the other obligations the law imposes. Though permanent racial segregation, one-to-one inmate to officer ratios, and handcuffed escorts might seem like the best possible means to protect inmates from violent dangerous conditions at CSP–Solano, the Constitution prohibits segregation of inmates by race merely because of a generalized expectation of racial violence. *Johnson v. California*, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (U.S.2005). Prisons are required to narrowly tailor their policies to address *particularized circumstances*.

*Sisto*, No. 2:08-cv-3120, 2011 WL 3667434, at *6 (emphasis in original).

In this instance, Plaintiff still argues that since Hispanic inmates were on lock-down, and inmate Gomez is Hispanic, Defendants should have known that and took measures to protect Plaintiff (an African American) from the danger that inmate Gomez posed. However, Plaintiff fails to allege any particularized circumstances to demonstrate that Defendants were on notice that specifically inmate Gomez was going to harm Plaintiff. In his amended complaint he concedes: Plaintiff has no prior history of ill will with Gomez, so Plaintiff didn't feel threatened. He couldn't, therefore, particularize information that [Plaintiff] was in danger and pass it on to officials." Doc. 10 at 4. Plaintiff further concedes that during the September 3, 2008, lock down, Hispanic inmates were dangerous "to staff and inmates alike no[t] to just the Plaintiff personally." Doc. 10 at 4.

The mere fact that Gomez was Hispanic during a Hispanic lock-down, and that Defendants "[a]s trained prison officials, [have the] duty to provide personal safety to inmates by following their

6

program status reports" does not entail that Defendants were deliberately indifferent for allowing inmate Gomez to work in the main kitchen with Plaintiff, an African American male.

As Defendants did not have knowledge that inmate Gomez posed a specific threat to Plaintiff, Defendants were not deliberately indifferent to Plaintiff's safety and their failure to follow the lock-down procedure amounts to negligence. Therefore, Plaintiff fails to state a claim upon which relief can be granted.

### III.    Conclusion and Order

The Court finds that Plaintiff's First Amended Complaint filed on December 19, 2011, fails to state any Section 1983 claims upon which relief may be granted against the named Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." In addition, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted). However, in this action, Plaintiff filed two complaints and received substantial guidance from the Court in its initial screening order. Doc. 9. Since Plaintiff concedes that Defendants had no way to know that there existed a particularized threat to Plaintiff and concedes that Plaintiff did not even believe Gomez posed a threat to him on September 3, 2008, the Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore orders that further leave to amend not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, the Court HEREBY ORDERS that this action be DISMISSED in its entirety, WITH PREJUDICE, for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:    December 27, 2011

UNITED STATES MAGISTRATE JUDGE